UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL ROBBINS,

    Plaintiff,

v.     CASE NO. 3:08-cv-692-J-TEM

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his claim for disability benefits. Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #10). Defendant filed a brief in support of the decision to deny disability benefits (Doc. #11). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

Plaintiff Michael Robbins filed for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on March 16, 2005, alleging disability as of December 31, 1999 (Tr. 265-67).[1] Plaintiff's initial application was denied, as was his request for reconsideration (Tr. 31-38, 254-63). Plaintiff timely requested a hearing before Administrative Law Judge ("ALJ") Robert Droker and a hearing was held on November 27, 2007 (Tr. 274). On December 12, 2007, the ALJ issued an unfavorable decision (Tr. 8-20). Subsequently, the Appeals Council affirmed the decision of the ALJ, rendering the ALJ's decision final (Tr. 4-7). Plaintiff now appeals.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[2]; *Crayton v. Callahan*, 120 F.3d

---

[1] Plaintiff previously filed an application for a period of disability and DIB on April 1, 2003, alleging he became disabled on January 2, 2000 (Tr. 54-56, 62). The Commissioner denied this application in an initial determination (Tr. 36-38). Plaintiff did not appeal.

[2] All references made to 20 C.F.R. will be to the 2009 edition unless otherwise specified.

1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. §§ 404.1512(c); 416.912(c).

### III. Statement of the Facts

Plaintiff Michael Robbins was born on October 4, 1957; he was fifty years old at the time of the ALJ's decision (Tr. 277).  Plaintiff has completed the eleventh grade and did not complete his general equivalency diploma ("GED") (Tr. 278).  Plaintiff has past relevant work history as an automobile mechanic and as a security guard (Tr. 301-02).  Plaintiff alleges he became disabled on December 31, 1999 due to a closed head injury following an automobile accident (Tr. 35; Doc. #10 at 10).  Plaintiff alleges that the residual effects of this injury have resulted in limitations on his ability to remember, focus, and maintain a sufficient level of concentration—which consequently impede his ability to maintain

4

employment (Tr. 73).

In his decision, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels (Tr. 15).[3] The ALJ specified, however, that Plaintiff's ability to perform the full range of all work was reduced due to moderate limitations in persistence and pace associated with slowing in Plaintiff's thought process and a moderate impairment in his short-term memory (Tr. 15). The ALJ found Plaintiff retains the ability to understand, carry out, and remember simple instructions and to use judgment (Tr. 15). Additionally, the ALJ determined that Plaintiff requires a low stress job, limited to simple tasks (Tr. 15). In determining Plaintiff's RFC, the ALJ considered the opinion of three examining medical consultants, *infra* (Tr. 17).

On June 12, 2003, J. Nicholas Prewett, Ph.D. (Dr. "Prewett") examined Plaintiff (Tr. 147-50). Dr. Prewett noted that Plaintiff had significant defects in his recent and remote memory, and that he had difficulties in recalling recent events (Tr. 148). For example, Plaintiff had difficulties in remembering things that he ate the previous day (Tr. 148). Dr. Prewett assessed Plaintiff a Global Assessment of Functioning ("GAF") score of fifty (50) (Tr. 149).[1] Dr. Prewett, however, stated that Plaintiff's attention and concentration appeared intact, and that his quality of thinking was rational, relevant, and coherent (Tr.

---

[3]Plaintiff's alleged physical impairments are not at issue on appeal.

[1]The Global Assessment of Functioning Scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100. A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning." A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning. A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, [and] has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

148). Plaintiff also appeared to be oriented to person, place, and time (Tr. 148).

On May 09, 2005, Peter Knox, M.Ed., Psy.D. ("Dr. Knox") examined Plaintiff (Tr. 173-79). Dr. Knox found Plaintiff had slowness in his thought process, but that this did not seem significant (Tr. 177). He indicated that Plaintiff's short-term memory was impaired, but his long-term memory was intact (Tr. 177). According to Dr. Knox, Plaintiff had no significant problems with his concentration or persistence (Tr. 177). Plaintiff was able to count backwards from twenty to one with no errors and was able to say his ABC's easily (Tr. 176). He could relate information in a rational, coherent, and sequential fashion (Tr. 176). Plaintiff remembered that he ate a salad and hot dogs for dinner the previous evening (Tr. 176). Dr. Knox diagnosed Plaintiff with mild dementia, and assessed him a GAF score of 65 (which indicates some mild symptoms but generally functioning pretty well, *supra* n.1) (Tr. 177). Dr. Knox stated that Plaintiff "is capable of managing his own funds. He [Plaintiff] said he pays for his electricity on his own" (Tr. 177).

On October 10, 2007, Philip Yates, Ph.D. ("Dr. Yates") performed a consultative psychological examination of Plaintiff at the request of Plaintiff's attorney (Tr. 226-53). Dr. Yates performed a battery of examinations and reported, *inter alia*, that Plaintiff showed significant problems with maintaining attention and concentration and engaging in conversation that involves receiving, processing, and responding to information from others (Tr. 234). Dr. Yates stated that Plaintiff showed a significantly problematic pattern of responsiveness on direct assessment of neuro-cognitive functioning (Tr. 234). Plaintiff showed a strong potential to be irritable, flippant, and pessimistic (Tr. 234). Dr. Yates, however, also reported that Plaintiff showed generally adequate and intact auditory sequential memory for simple information acquisition and processing and that he had math

6

computational skill capacity on a mental basis (Tr. 233). Dr. Yates reported that Plaintiff does not have any significant limitations in his ability to understand, remember, and carry out very short and simple instructions (Tr. 249).

Based on his assessment, Dr. Yates concluded that Plaintiff had a significant cognitive impairment that, in his opinion, met the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"), 12.02, organic brain disorder (Tr. 236).

At the November 27, 2007 hearing, Plaintiff testified that he is able to do laundry, wash dishes, sweep, take out the trash, mow the grass, cook, dress, and bathe himself (Tr. 284-89). Plaintiff frequents a grocery store weekly and carries some of the packages (Tr. 287-88). Plaintiff drives to his parents' house on a daily basis to cook for them and to take them to doctor appointments (Tr. 284-85, 178). Plaintiff occasionally plays golf at a civic club, goes offshore fishing, and occasionally drinks beer while watching football (Tr. 148, 284, 287, 292). Additionally, Plaintiff stated he dates, plays billiards, and is able to count money, pay bills, and take care of his personal hygiene (Tr. 149, 177, 192).

The ALJ procured testimony from Vocational Expert ("VE"), Donna Mancini, who testified Plaintiff is unable to perform the demands of his past relevant work (Tr. 301-02). Thus, the ALJ asked the VE to give her opinion as to what jobs exist in the national and regional economy that Plaintiff can perform based on a hypothetical individual with Plaintiff's past work experience, age, education, and who was limited to medium, unskilled work (Tr. 302). The ALJ added that Plaintiff required a low stress working environment and that he was limited to performing only simple tasks (Tr. 302).

The VE testified that, given these restrictions, Plaintiff could perform the representative occupations of: parking lot attendant; toll collector; silver wrapper; change

7

person (amusement & recreation); and laundry worker II (Tr. 302-03). The ALJ accepted the testimony of the vocational expert regarding the existence of other jobs in the national and regional economy that Plaintiff can perform despite his limitations (Tr. 18-20; *see also* Tr. 302-03). Consequently, the ALJ found Plaintiff not disabled at Step 5 of the sequential evaluation process (Tr. 19-20).

### IV. Analysis

Plaintiff contends the ALJ's decision to discredit the medical opinion of consultative examiner, Dr. Yates, is not supported by substantial evidence (Doc. #10 at 10-15). As stated herein, the undersigned is not persuaded by this argument.

On October 10, 2007, Dr. Yates performed a consultative psychological examination of Plaintiff (Tr. 226-53). Dr. Yates concluded that Plaintiff has a significant cognitive impairment which, in his opinion, meets the requirements of Listing 12.02, organic brain disorder (Tr. 236).

To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 416.926; 404.1526. The evidentiary standards for presumptive disability under the Listings are more stringent than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic screening in based on medical findings rather than an individual judgment based on all relevant factors in a claimant's file. *See* 20 C.F.R. §§ 416.926; 404.1526; *Sullivan*

8

*v. Zebley*, 493 U.S. 521, 532 (1990); *Wilkinson*, 847 F.2d at 662.

Dr. Yates stated he found Plaintiff met the requirements of Listing 12.02, organic brain disorder, because Plaintiff satisfied the "C" criteria of said listed impairment (Tr. 247).

In order to satisfy the "C" criteria of Listing 12.02 an individual must have:

[A] [m]edically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02.

Dr. Yates found Plaintiff met the requirements of Listing 12.02 because Plaintiff: (1) has a medically documented history of a chronic organic mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support; and (2) has a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement (Tr. 247); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02.

The ALJ, however, determined that Dr. Yates's opinion, *supra*, was inconsistent with the other medical evidence of record (Tr. 15). The Court finds this determination is

9

supported by substantial evidence for the reasons that follow.

It is the Commissioner who decides the ultimate legal question of whether an impairment provided for in the Listings is either met or equaled. SSR 96-6p, 1996 WL 374180, *3 (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 416.926, 404.1526. As a trier of fact, an ALJ is not bound by a finding of a medical or psychological consultant as to whether an individual's impairment(s) are equivalent in severity to a impairment provided for in the Listings. SSR 96-6p, 1996 WL 374180, *3. The findings of a consultative physician or psychologist, however, must be received into the record as expert opinion evidence and be afforded appropriate weight. *Id.*

In this instance, the ALJ afforded less weight to Dr. Yates's opinion because Dr. Yates's assessment of Plaintiff was inconsistent with the other medical evidence of record (Tr. 17-18).

The ALJ noted, and the record reflects, that Plaintiff does not meet the second prong of the "C" criteria, *supra* (Tr. 15). Specifically, the record evidence shows Plaintiff can function on a daily basis, without the need of a highly supportive living arrangement. To illustrate, Plaintiff testified that he is able to do laundry, wash dishes, sweep, take out the trash, mow the grass, cook, dress, and bathe himself (Tr. 284-89). Plaintiff frequents a grocery store weekly and carries some of the packages (Tr. 287). Plaintiff drives to his parents' house on a daily basis to cook for them and to take them to doctor appointments (Tr. 178, 284-85). Plaintiff occasionally plays golf at a civic club, goes offshore fishing, and occasionally drinks beer while watching football (Tr. 148, 284, 287, 292). Additionally, Plaintiff stated that he dates, plays billiards, and is able to count money, pay bills, and take care of his personal hygiene (Tr. 149, 177, 192).

Based on the foregoing, the Court finds the ALJ's determination that the record fails to establish the presence of the "C" criteria of Listing 12.02 (*i.e.* that Plaintiff cannot function outside a highly supportive living arrangement) is supported by substantial evidence of record.  *See McIntosh v. Barnhart*, 172 Fed. Appx. 592, 2006 WL 775142, *1 (5th Cir. Mar. 27, 2006) (approving the finding that the claimant did not meet the "C" criteria for Listing 12.02 when, despite living with his parents, the claimant "appears to have taken care of almost all of his personal needs and made substantial contributions to the household without a high degree of supervision").[2]

With respect to the ALJ's RFC determination, the Court likewise finds the ALJ's assessment in this regard is supported by substantial evidence for the reasons that follow.

A claimant's RFC determination is within the sole purview of the Commissioner; however, an ALJ must always consider and address medical source opinions.  SSR 96-8p, 1996 WL 374184, *2 (S.S.A. July 2, 1996).  If an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the medical source's opinion was not adopted.  *Id.*  Additionally, an ALJ may give less weight to any physician's opinion if the record contains contradictory opinions by other sources or if the opinion is not supported by the other record evidence.  *Id.*; *see also* 20 C.F.R. §§ 404.1527; 416.927.

Here, the ALJ found Plaintiff retained the following RFC:

Claimant [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant has moderate limitations in persistence and pace due to slowness in his thought process and impairment in his short-term memory. The claimant is able to understand, carry out, and remember simple

---

[2]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

> instructions and to use judgment. The claimant needs a low stress job and is limited to simple tasks.

(Tr. 15).

Although Dr. Yates indicated Plaintiff had marked difficulties in maintaining concentration, persistence, or pace (Tr. 246), the ALJ noted, and the record reflects, Dr. Yates's opinion in this regard is inconsistent with the other medical evidence of record (Tr. 148, 177, 249).

More particularly, on June 12, 2003, Dr. Prewett evaluated Plaintiff and stated Plaintiff had significant difficulties with both his recent and remote memory (Tr. 148). For instance, Dr. Prewett reported that Plaintiff had difficulty recalling recent events, such as what he ate the previous day (Tr. 148; *but see* Tr. 176, where Plaintiff reported to Dr. Knox that he ate a salad and hot dogs for dinner the previous night) (Tr. 147-50). Dr. Prewett additionally noted, however, that Plaintiff's attention and concentration appeared intact, and that his quality of thinking was rational, relevant, and coherent (Tr. 148).

In May 2005, Dr. Knox evaluated Plaintiff (Tr. 173-79). Dr. Knox found Plaintiff had slowness in his thought process, but that this did not seem significant (Tr. 177). He indicated Plaintiff's short-term memory was impaired, but his long-term memory was intact (Tr. 177). According to Dr. Knox, Plaintiff had no significant problems with his concentration or persistence (Tr. 177). Plaintiff was able to count backwards from twenty to one with no errors and was able to say his ABC's easily (Tr. 176). He could relate information in a rational, coherent, and sequential fashion (Tr. 176). Plaintiff remembered that he ate a salad and hot dogs for dinner the previous evening (Tr. 176). Dr. Knox concluded that Plaintiff had no significant issues with his concentration or persistence (Tr.

177).

Although Dr. Yates found Plaintiff markedly limited in his ability to maintain attention and concentration for extended periods of time and to carry out detailed instructions, Dr. Yates additionally noted that Plaintiff's ability to understand and carry out short and simple instructions is not significantly limited (Tr. 249). The ALJ's RFC assessment accounted for Plaintiff's inability to perform work that involves understanding and carrying out detailed instructions by limiting Plaintiff to work that involves only the ability to understand, carry out, and remember simple instructions (Tr. 15). The ALJ also limited Plaintiff to low stress jobs that involve only simple tasks (Tr. 15, 249). Moreover, Dr. Yates stated that Plaintiff only has moderate deficiencies in concentration, persistence, or pace that result in frequent failure to complete tasks in a timely manner (Tr. 252). The ALJ accounted for this limitation by finding "the claimant [Plaintiff] has moderate limitations in persistence and pace due to slowness in his thought process and impairment in his short-term memory (Tr. 15).

As part of his burden of proving that he is disabled, Plaintiff must establish, through objective evidence, that his impairment(s) limit his ability to work. 20 C.F.R. §§ 404.1512(c); 416.912(c). An individual's statement concerning a condition is not alone conclusive evidence of a disability. 20 C.F.R. §§ 404.1529(a); 416.929(a). Moreover, a diagnosis is not enough to establish separate functional limitations in addition to those already established by the record and found credible by the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (finding the mere existence of an impairment neither reveals the extent to which the impairment limits one's ability to work, nor does it undermine the ALJ's determination in that regard). The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of

13

deviation from purely medical standards of normal body function. *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).

Based on the foregoing, the Court finds the ALJ did not err in discounting the opinion of Plaintiff's consultative examiner, Dr. Yates, because it is inconsistent with the other evidence of record—which indicates Plaintiff suffers mostly moderate cognitive limitation from his impairment(s). *See* 20 C.F.R. §§ 404.1527(d)(4); 416.927(d)(4); *see also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (approving ALJ giving less weight to a physician's statement based, in part, on the statement being inconsistent with other evidence of record). Thus, despite Plaintiff's arguments that the ALJ erred when evaluating Dr. Yates's opinion and giving it less weight, the Court finds the ALJ correctly found Dr. Yates's opinion was entitled to little weight on the basis that it was inconsistent with all other substantial evidence of record that showed much less cognitive limitation than assessed by Dr. Yates. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (ALJ is not required to include conditions in his or her RFC determination that he or she does not find exist).

Plaintiff also maintains the ALJ committed reversible error by making two misstatements (Doc. #10 at 11-12). The first misstatement to which Plaintiff refers concerns the ALJ's statement that, "[n]o treating or examining physician has ever said the claimant [Plaintiff] was unable to work" (Tr. 17). The other misstatement concerns the ALJ's statement that, "Dr. Yates [sic] opinion is inconsistent with the medical evidence of record which shows minimal findings" (Tr. 17).

With respect to the first misstatement, the Court would note that no **treating** physician has stated Plaintiff is unable to work. The Court, however, acknowledges that

one consultative examiner, Dr. Yates, did find Plaintiff met the requirements of a listed impairment, and would presumably be disabled.  Consequently, the statement made by the ALJ in this regard, indeed, is not entirely correct.  Nevertheless, the Court finds said error to be harmless for the reasons stated below.

The Seventh and the First circuits have addressed harmless error with their findings in *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), where the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result and in *Ward v. Comm'r* of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000), where the court found that while an error of law by the ALJ may necessitate a remand, a remand is not **essential** if it will amount to no more than an empty exercise.

Here, remand for the aforementioned misstatement would not change the outcome of the case and, thus, would be an empty exercise.  For instance, the ALJ discussed the medical opinions of Plaintiff's treating and examining sources in great detail (*see* Tr. 13-18).  In doing so, the ALJ acknowledged that Dr. Yates found Plaintiff met the requirements of Listing 12.02; however, as set forth above, the ALJ properly discounted this opinion.  In addition, the ALJ found Plaintiff's cognitive impairment(s) were "severe" and assessed a residual functional capacity that accounted for the limitations supported by the record (*see* Tr. 13-18).  The Court has already found the ALJ's RFC assessment is consistent with the record evidence as a whole, *supra*.  Thus, any remand on this point would be futile.

The same rationale applies with respect to the second misstatement made by the ALJ.  Although, admittedly, the record contains more than "minimal" findings regarding Plaintiff's cognitive function, the record, as a whole, supports the ALJ's ultimate RFC

determination. Thus, any remand would necessarily center around a question of semantics as to whether the ALJ should have used the word moderate as opposed to the word minimal when describing limitations that the ALJ clearly recognized as moderate throughout his decision. Therefore, any remand on this point would be futile given the fact it would not change the outcome of the case.

## V. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of September, 2009.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge